**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**January 5, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID A. BANKS,

    Defendant - Appellant.

No. 21-1410
(D.C. No. 1:09-CR-00266-CMA-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **BALDOCK**, and **BRISCOE**, Circuit Judges.
_____

Defendant David Banks and several codefendants were convicted in 2011 of

mail fraud, wire fraud, and conspiracy to commit mail fraud and wire fraud. After

the convictions and sentences were affirmed on direct appeal, one of Banks's

codefendants sought and was granted a new sentencing proceeding pursuant to 28

U.S.C. § 2255. That codefendant then successfully moved to seal portions of the

hearing transcripts and records in his § 2255 proceeding. Banks filed a motion

effectively challenging the district court's sealing order and, alternatively, seeking a

new order unsealing the sealed transcripts and documents. The district court denied

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Banks's motion.  Banks now appeals.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's order.

I

*The original criminal proceedings*

Banks is a former member of the Colorado Springs Fellowship Church (CSFC).  Banks's mother, Rose Banks, is the pastor of CSFC.  Banks, along with other members of CSFC, including Gary Walker, Demetrius Harper, Clinton Stewart, David Zirpolo, and Kendrick Barnes, "helped run IRP Solutions Corporation [(IRP)], a software development company."  *United States v. Walker*, 761 F. App'x 822, 826 (10th Cir. 2019).  "IRP was formed to produce computer software . . . that would supposedly provide a nationally accessible database for law-enforcement agencies, 'computerize their systems,' and 'prevent hacking and identity theft.'"  *United States v. Banks*, 761 F.3d 1163, 1170 (10th Cir. 2014).  "Banks was the Chief Operating Officer" for IRP.  *Id.* at 1171.  Banks and the other five members who helped run IRP were collectively known as the IRP-6.

In the course of running IRP, the IRP-6 "falsified employee time cards and hired several staffing companies without having any ability to pay for their services."  *Walker*, 761 F. App'x at 827.  To persuade the staffing companies to work for IRP, the IRP-6 falsely claimed that IRP was doing business with various local and federal law enforcement agencies.  Later, when IRP failed to pay the staffing companies' invoices and the staffing companies questioned defendants about this, the IRP-6 "gave false assurances that payment would be forthcoming, and they continued to

2

imply that they were doing business with large government law-enforcement agencies." *Banks*, 761 F.3d at 1173. The IRP-6 also "employed various tactics to prevent the victim companies from learning that they would not be paid," including "us[ing] entities they controlled as references in credit applications," "submit[ing] time cards to staffing companies in which they reported time using various aliases," and "report[ing] overlapping hours for the same employee at multiple staffing companies." *Id*. "In the end, forty-two different staffing companies were left with outstanding invoices totaling in excess of $5,000,000—amounts [defendants and IRP] had not paid (and apparently could not pay)." *Id*.

In June 2009, a federal grand jury indicted the IRP-6 "on multiple counts of conspiracy to commit mail fraud and wire fraud, and committing mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1349, 1341, and 1343." *Id*. The case proceeded to trial in September 2011. "Although defendants were represented by counsel prior to trial, they elected to proceed pro se during trial." *Id*. "On October 20, 2011, the jury returned guilty verdicts as to all [d]efendants on one or more counts of mail fraud and wire fraud, and conspiracy to commit mail fraud and wire fraud." *Id*. at 1174. "Defendants were sentenced to terms of imprisonment ranging from 87 to 135 months." *Id*. at 1170.

Banks and his codefendants appealed their convictions. This court consolidated the appeals and affirmed the judgment of the district court. *Id*. at 1170 and 1174.

*Walker's § 2255 motion*

In 2015, Gary Walker, one of Banks's codefendants, "filed a 28 U.S.C. § 2255 motion, in part raising a claim of ineffective assistance of sentencing counsel." *Walker*, 761 F. App'x at 826.  "The district court convened an evidentiary hearing, at which sixteen witnesses testified, including . . . Walker; former CSFC members; and Gwendolyn Maurice Lawson and Joshua Lowther, counsel for . . . Walker at sentencing." *Id.*  "The district court concluded . . . Lawson, who is a member of the CSFC, operated under a conflict of interest because Pastor Rose Banks of . . . CSFC dictated counsel's strategy." *Id.*  Accordingly, the district court granted Walker relief in the form of a resentencing proceeding.

*Walker's motion to restrict access to the transcript of his § 2255 hearing*

"Walker moved to restrict access to the transcript of his § 2255 hearing, and the district court granted the motion." *Id.*  "Lawson, on behalf of herself and . . . Walker's codefendants, twice moved to obtain the hearing transcript." *Id.*  "The district court predominantly denied the motions but permitted . . . Lawson access to the portion of the transcript containing her own testimony." *Id.*; *see* ECF Nos. 1090 and 1092.  "Lawson, again on behalf of herself and . . . Walker's codefendants, noticed an appeal."[1]  *Walker*, 761 F. App'x at 826.  "Thereafter, . . . CSFC moved to

---

[1] In her appellate brief, Lawson repeatedly listed herself as the "Attorney for Barnes, Banks, Harper, Stewart, and Zirpolo."  Appellant's Principal Brief, *United States v. Walker*, No. 17-1415 (10th Cir. Mar. 12, 2018).  The notice of appeal also identified Lawson, Harper, Barnes, Stewart, Banks, and Zirpolo as parties to the appeal.  Ultimately, however, this court concluded that Banks was not a party to the appeal.  761 F. App'x at 829 ("We . . . conclude that . . . Lawson lacked a basis to

4

unseal the transcript." *Id*. "The district court denied . . . CSFC's motion, concluding that releasing the transcript was likely to result in CSFC members harassing and threatening . . . Walker, as well as the former CSFC members who testified at the § 2255 hearing." *Id*.; ECF No. 1114. CSFC appealed from the district court's order denying its motion.

*The original appeals*

In their respective appeals, Lawson and CSFC argued "that the strong presumption in favor of the public right of access to judicial records exceeded . . . Walker's interest in restricting access to the transcript." *Walker*, 761 F. App'x at 826. Lawson asserted "four additional arguments for vacating or reversing the district court's denial of the[] motions to receive the transcript." *Id*.

On January 23, 2019, this court issued an order and judgment "vacat[ing] the district court's order as to . . . CSFC and remand[ing] for further proceedings because the district court did not adequately account for the strong presumption in favor of public right of access to judicial records and did not narrowly tailor its orders restricting access to the transcript." *Id*. This court also "affirm[ed] the district court's rulings on the motions to receive the transcript by" Lawson, who "did not raise a public right of access argument" and whose other arguments the panel concluded were either "unpreserved or wholly without merit." *Id*.

file the motions and notice of appeal on behalf of . . . Banks and we do not include him as an appellant in Case Number 17-1415.").

*The proceedings on remand*

On June 9, 2019, the CSFC filed a motion asking the district court to direct the court reporter to provide CSFC a certified copy of the transcript of Walker's habeas corpus proceedings, and directing the clerk of the district court to unseal all documents and other records in Walker's habeas corpus proceedings.

On November 21, 2019, CSFC's attorney entered appearances on behalf of Banks, Harper, Stewart, and Zirpolo.  On that same date, CSFC, Banks, Harper, Stewart, and Zirpolo filed a joint motion asking the district court judge to recuse herself from all further proceedings in the case and to reassign the case to a different district court judge.

On November 21, 2019, the district court issued an order unsealing, in part, the evidentiary hearing transcripts from Walker's habeas corpus proceedings.  In the opening section of its order, the district court recounted the procedural history of the case and noted, in particular, that "[t]he record show[ed] that Pastor Banks and some CSFC members ha[d] engaged in a consistent pattern of harassment against anyone who d[id] not strictly comply with the demands of Pastor Banks."  ECF No. 1146 at 4.  The district court also noted that Lawson, "at the conclusion of her testimony" at Walker's habeas corpus evidentiary hearing, "surreptitiously substituted a 'dummy binder' of the same size and color as the Court's Exhibit Notebook, but which contained only tabbed dividers and blank sheets of paper, for one of the Court's Exhibit Notebooks and walked out of the courtroom with the Court's Exhibit

6

Notebook."[2]  *Id*. at 4–5.  Considering this court's directions in *Walker*, the district court concluded "it [wa]s evident that the safety of many of the witnesses [wa]s still at risk, and therefore, some, but not all, of the testimony must remain restricted."  *Id*. at 10.  The district court explained that "[t]he safety and welfare risk to many of the witnesses" who testified at Walker's evidentiary hearing "remain[ed] high."  *Id*.  It noted in support:

> A Just Cause, an organization founded by CSFC to act on behalf of and in coordination with the IRP-6, has engaged in a campaign to harass all involved with this case, and the Court has no reason to conclude that it will halt its pattern of harassment.  As recently as October 22, 2019, A Just Cause alleged, without evidence, that the Court is concealing misconduct and "secretly used her court to conduct personal attacks against [IRP-6's] Pastor (Rose Banks) and Church (Colorado Springs Fellowship Church)."  A Just Cause, Colorado Federal Judge and Prosecutor Entangled in Misconduct Cover-Up (Oct. 22, 2019), http://www.digitaljournal.com/pr/4481574 [https://perma.cc/68RS-CNTM].  If all witness testimony from the § 2255 hearing were to be unsealed, the Court is concerned that CSFC would turn its attention away from the Court and begin harassing these witnesses.  Therefore, the Court determines that circumstances have not changed significantly, and as such, those witnesses who testified about CSFC must remain protected and their testimony will remain sealed.

*Id*. at 10–11.[3]

---

[2] The district court noted that "[t]here had previously been similar unprofessional activity on the part of the Defendants" during their criminal trial.  ECF No. 1146 at 5.  In particular, the district court noted that defendants removed one of the jury rosters on the first day of trial, and proceeded thereafter to harass multiple jurors.  *Id*.

[3] The article cited by the district court is no longer available at the Digital Journal hyperlinked URL address.  The Perma citation, however, does link to the cited article.

The district court also purported to weigh the public's right to access judicial transcripts against the risks to the witnesses. In doing so, it began by noting that "the relevant facts and circumstances [we]re such that restricting public access [wa]s essential to preserving the safety and security of many of the testifying witnesses." *Id*. at 11. The district court noted it was "particularly concerned that, because CSFC ha[d] previously engaged in harassment and intimidation tactics, it m[ight] do so again, this time targeting witnesses from the § 2255 hearing." *Id*. The district court found that "CSFC lashes out—unrelentingly—towards those whom Pastor Banks perceives to have wronged her or her church," and that CSFC "staged a coordinated effort to contact and repeatedly harass members of the jury" after the initial trial. *Id*. The district court also found that "Lawson's intentional swapping of a 'dummy binder' for the Court's Exhibit Notebook and CSFC's harassment of the jurors demonstrate[d] that CSFC members w[ould] go to great, even possibly illegal, lengths on behalf of CSFC." *Id*. at 12. The district court in turn concluded that CSFC's claim that it needed the hearing transcripts "to determine the extent to which it ha[d] been maligned by the testimony" was "disingenuous" because "[m]embers of the CSFC were present in the courtroom throughout the § 2255 hearing . . . and . . . generally kn[e]w what was said." *Id*. The district court stated it "believe[d] that CSFC want[ed] transcripts of the testimony so that its members . . . c[ould] threaten and harass witnesses who were critical of CSFC." *Id*. The district court in turn concluded that if it "were to release the detailed testimony of all the witnesses, the precise language would serve only to enflame CSFC and put the witnesses at risk of

harm." *Id*. The district court concluded "that this is one of those cases in which the right of public access to judicial records is outweighed by the importance of protecting certain witnesses from further harm." *Id*. at 13.

The district court then proceeded to "consider[] in detail the three particular factors that [this court] highlighted" in *Walker*, i.e., "reliance on sealed records to determine substantive rights; the absence of a jury; and whether sealed information has already been disclosed." *Id*. With respect to the first of these factors, the district court noted that "in determining . . . Walker's resentencing," it "considered only testimony given in open court," and it in turn concluded that "[t]his public access mitigate[d] concern about using the restricted testimony to determine . . . Walker's substantive legal rights and undermine[d] any argument that [its] ruling was made based on testimony unavailable to the public." *Id*. at 14. The district court therefore concluded "that, because it allowed public access to the proceedings, restricting access to the testimony of witnesses who are at risk of harassment [wa]s the most appropriate way to 'carefully balance[]' the public's right of access to the transcripts with safety concerns for those witnesses." *Id*. (quoting *Davis v. Reynolds*, 890 F.2d 1105, 1109 (10th Cir. 1989)). With respect to the second factor, i.e., the absence of a jury, the district court again noted that it "allowed full public access to" Walker's resentencing hearing, "which was attended by members of the public," and it also noted that "A Just Cause even issued multiple press releases about the hearing, which amplified the public's awareness of the Court's decisions." *Id*. Thus, the district court "f[ound] that, although there was no jury present, there was attendance by and

9

engagement from the public, which help[ed] keep [it] accountable." *Id*. at 15. The district court also noted that "Walker, the defendant, [wa]s not at risk of unfair treatment regarding the sealing of the transcripts because he was the party who requested the restrictions." *Id*. Indeed, the district court noted, it was "concerned about unfair treatment and harassment of . . . Walker, as well as other witnesses, if the records are not sealed." *Id*. (emphasis omitted) It therefore concluded that "one of the ultimate goals of having a jury present for court proceedings—protecting the defendant—[wa]s actually best accomplished by upholding the Level 2 restriction on certain witness testimony."[4] *Id*. As for the third factor, i.e., whether the sealed information had already been disclosed, the district court noted that "all the witness testimony in [Walker's] § 2255 hearing was given in an open courtroom." *Id*. The district court concluded that "[w]here, as here, witnesses face a significant risk of harassment, the distinction between merely hearing their testimony audibly as opposed to accessing transcripts of the testimony matters significantly." *Id*. The district court in turn noted that it if "were to release the testimony of many of the witnesses, those [persons] not present at the hearing could identify, locate, and harass those who gave testimony critical of CSFC." *Id*. at 15–16. Concern about the harassment of witnesses, the district court noted, was real rather than "theoretical" based upon "CSFC members' prior harassment of Jurors." *Id*. at 16. "Therefore,"

---

[4] The district court's local rules define Level 2 access as "limit[ing] access to the filing party and the court." D. Colo. Civ. R. 7.2(b) (outlining three levels of restriction on court documents and proceedings).

the district court concluded, "the testimony of many of the witnesses must remain under Level 2 restriction," depending upon "the relevant facts and circumstances of the testimony of each of the witnesses." *Id.* (quotation marks omitted).

The district court then turned to narrowly tailoring the restrictions that it placed on public access to the hearing transcripts. To begin with, the district court stated that it intended to refute A Just Cause's public allegations that the district court "want[ed] to keep transcripts sealed to hide the Court's misconduct" by "releasing all statements by the Court during the § 2255 hearing, except any names of witnesses whose identities are sealed." *Id.* at 17. The district court noted CSFC's concerns that the testimony at the hearing contained misinformation and innuendo regarding CSFC, and concluded that "CSFC's reputation w[ould] be best protected by not releasing testimony that criticizes it." *Id.* at 18. With that in mind, the district court noted "that the testimony of thirteen witnesses w[ould] remain under Level 2 restriction, while the testimony of two witnesses [would be] released in full." *Id.* The district court proceeded to summarize the reasons it was maintaining Level 2 restriction on the testimony of the thirteen witnesses:

- Walker: The district court concluded that Walker's testimony should "remain at Level 2 restriction because he spoke critically about CSFC, and therefore, the public disclosure of his testimony could threaten his personal safety." *Id.* at 19.

- Witness #2 and Witness #7: The district court found that both of these witnesses "work at the Federal Bureau of Prisons in Florence, Colorado," and

11

"may have daily contact with incarcerated CSFC members." *Id*. at 19–20. "Because their testimony reflects negatively on some CSFC members," the district court concluded that both were "at risk of harassment." *Id*. at 20. The district court further concluded that "[r]edacting their names w[ould] not sufficiently protect [them] because their identities may easily be determined through the particular details of the testimony." *Id*. In sum, the district court concluded that "maintaining a level 2 restriction [wa]s essential to preserving [their] safety, and that this overc[ame] any legitimate interest the public has in viewing the transcript." *Id*.

- Witness #3: This witness "[wa]s an expert witness." *Id*. The district court concluded that "full disclosure of [this witness'] testimony could embarrass" Lawson. *Id*. Consequently, the district court expressed concern "that Witness #3 [wa]s at risk of being a target of harassment by CSFC." *Id*. The district court noted that it "considered the Tenth Circuit's suggestion of releasing the testimony with narrowly tailored redactions of Witness #3's identity," but it noted that "because the witness' identity could be determined through docket entries, simply redacting Witness #3's name would not be sufficient, as CSFC could then connect Witness #3's identity with the corresponding testimony." *Id*. at 20–21.

- Witness #5: The district court found that this witness "ha[d] already endured harassment from Pastor Banks," and it therefore expressed "concern[] that Pastor Banks and other CSFC members could use Witness #5's testimony to

12

'gratify private spite' by harassing this witness with additional vigor." *Id*. at 21 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). As a result, the district court "maintain[ed] the level 2 restriction on Witness #5's testimony." *Id*.

- Witness #6: This witness was "an expert witness" who "testified extensively about [their] examination of, and conversations with, . . . Walker." *Id*. "Because this testimony describe[d] what . . . Walker experienced and how this relate[d] to Witness #6's determination that . . . Walker was under the undue influence of Pastor Banks," the district court expressed "concern[] that both Witness #6 and . . . Walker could be retaliated against for Witness #6's testimony." *Id*. The district court concluded that "[p]reserving both Witness #6's and . . . Walker's safety [we]re interests that outweigh[ed] the presumption of public access to the testimony." *Id*. at 21–22. The district court therefore "ke[pt] Witness #6's transcript at a Level 2 restriction." *Id*. at 22.

- Witnesses #9 through #14: These six witnesses were former members of CSFC and they each "testified about their experiences with the church, their treatment by Pastor Banks, and their treatment by members of CSFC who remained in the church after they left." *Id*. The district court stated that it "remain[ed] extremely concerned for the safety of the former CSFC members who testified, and fear[ed] that any of their testimony m[ight] be used by CSFC in retaliation against those witnesses." *Id*. The district court noted that these witnesses

13

"spoke very personally about the circumstances that led to either their expulsions from CSFC or their choices to leave CSFC," and it therefore concluded that "simply redacting their names would not protect their identities." *Id*. The district court ultimately concluded "that the public's general right to access to these records [wa]s outweighed by the 'higher value[]' of preserving the safety of these witnesses." *Id*. (quoting *Press-Enter. Co. v. Superior Court of Cal. for Riverside Cty.*, 478 U.S. 1, 10 (1986)).

- Witness #15: This was an expert witness whose "testimony contradict[ed]t he public image that CSFC seeks to project to the Colorado Springs community." *Id*. at 23. As a result, the district court concluded that this witness "could be at risk of harassment if this witness' testimony [wa]s released." *Id*. The district court also expressed "concern[] that the identity of Witness #15 c[ould] be determined through docket entries," which in turn could result in this witness "incur[ring] significant harassment." *Id*.

The district court also described the two witnesses whose testimony it was unsealing. First, the district court noted that Witness #4, Vernon Lee Gaines, "was the second process server who attempted to serve Pastor Banks with a subpoena," and he "describe[d] the steps he took to locate Pastor Banks and serve process on her." *Id*. at 23. The district court "conclude[d] that . . . Gaines [wa]s not at risk of harassment because he d[id] not speak negatively about CSFC." *Id*. at 23–24. Second, the district court noted that Witness #8, Joshua Lowther, "was co-counsel for . . . Walker and his codefendants during their sentencing and other post-conviction

14

matters." *Id*. at 24.  The district court concluded "that . . . Lowther's testimony [wa]s not likely to be used for a spiteful or scurrilous purpose," and it in turn concluded that "the public's right to access judicial records outweigh[ed] other competing concerns." *Id*. (internal quotation marks omitted).  Consequently, the district court ordered "Lowther's testimony [to] be released in full." *Id*.

On the same day that it issued its order unsealing in part the hearing transcripts, the district court also issued a separate order denying the joint motion for recusal as moot.  CSFC and the other defendants filed a motion for reconsideration of the district court's order.  On December 9, 2019, the district court granted in part and denied in part the motion for reconsideration.  More specifically, the district court "analyze[d] the arguments in" the motion for recusal "without focusing on the issue of mootness," and ultimately denied the request for recusal on the merits.  ECF No. 1149 at 1–2.

*CSFC's second appeal*

On February 7, 2020, CSFC filed a notice of appeal from the district court's orders granting CSFC limited access to the evidentiary hearing transcript and denying CSFC's motion to recuse.  On December 2, 2020, this court issued an order and judgment dismissing as untimely the portion of the appeal that sought to challenge the district court's November 21, 2019 order denying CSFC's motion for access to

the entire transcript,[5] and affirming the district court's December 9, 2019 order

granting reconsideration but denying CSFC's motion to recuse. *United States v.*

*Walker*, 838 F. App'x 333 (10th Cir. 2020) (*Walker II*).

*Banks's motion*

On February 5, 2021, approximately two months after this court rejected

CSFC's appeal, Banks, represented by the same counsel who represented CSFC in its

unsuccessful appeal, filed a pleading entitled "MOTION TO DIRECT COURT

REPORTER TO PROVIDE TRANSCRIPT TO DEFENDANT-MOVANT, AND TO

UNSEAL ALL DOCUMENTS SUBMITTED THEREIN."  ECF No. 1171 at 1.  The

motion, at its outset, asked the district court to issue an order (a) "[d]irecting the

Court Reporter to provide a certified copy of the transcript" of Walker's habeas

corpus proceedings, and (b) "[d]irecting the Clerk of the Court to unseal all

documents and other records" in Walker's habeas corpus proceedings.  *Id*.  The

motion then outlined the procedural history of the case and noted, in particular, this

court's rulings in *Walker* and *Walker II*.  Banks asserted in the motion that, because

of this court's ruling in *Walker II*, "there ha[d] been no final determination, by the

Court of Appeals, as to the validity of the November 21, 2019 ruling of [the district

court] regarding the unsealing of the *Walker* Habeas proceeding."  *Id*. at 3.  Banks

then asserted that it was his "position . . . that . . . as a co-defendant of Walker in the

---

[5] This court concluded that CSFC filed its notice of appeal seventeen days too late to timely challenge the district court's order denying CSFC's request for access to the evidentiary hearing transcript.

16

original criminal proceeding he ha[d] a right to a copy of the demanded records," and that, "in any event, the unsealing Order of the [district court issued on November 21, 2019] violate[d] the basic tenets of the law that there is an all but irrebuttable presumption that trial records and judicial proceedings should be open and available to the public at large." *Id*. Banks further argued, in apparent reference to the district court's November 21, 2019 order, that the district court "failed, not only to properly apply [its own local rules regarding the sealing of documents], but also, in its attempted explanation as to what was being sealed, and why it was being sealed did not comply with either the [local rule] or the established precedent." *Id*. at 5. Banks also asserted that he was "the only one of the original Defendants who [wa]s still under the supervision of U.S. Probation," and "[a]s a co-defendant of . . . Walker[,] he ha[d] a fundamental right to access all judicial proceedings that m[ight] impact his sentence, and any consequences—civil or criminal—that m[ight] arise out of his conviction." *Id*. at 6. That "include[d]," Banks asserted, "any motion he m[ight] seek for the restoration of his civil privileges, denied as a result of his conviction, and any relief he m[ight] seek for expungement of his record." *Id*. In particular, Banks mentioned the possibility of seeking an expungement of his convictions "under the All Writs Act," or "seek[ing] a pardon from the President." *Id*.

The district court denied Banks's motion on November 3, 2021, noting as follows:

> The Court has already considered, at length, the arguments in favor of unsealing the relevant transcripts, and the Court incorporates that analysis here. (*See* Doc. #1146). The Court has reviewed Mr.

17

Banks's motion (Doc. #1171), the relevant portions of the record, and the Court's prior order on the matter (Doc. # 1146).  Having considered all of Mr. Banks's arguments in light of the present circumstances, the Court stands by its prior conclusion that "this is one of those cases in which the right of public access to judicial records is outweighed by the importance of protecting certain witnesses from further harm." (Doc. #1146).  Specifically, Mr. Banks and his confederates have a demonstrated history of harassing and intimidating witnesses and jurors and of making misrepresentations to the Court.  The Court has serious concerns that granting Mr. Banks's motion to access the requested records would facilitate further harassment and intimidation.  These concerns for witness and juror safety outweigh Mr. Banks's interest in accessing the requested records.

Furthermore, Mr. Banks has failed to demonstrate a legitimate reason for accessing the requested records.  The records in question do not concern Mr. Banks; rather, they concern another defendant's claim that he received ineffective assistance of counsel at certain phases of his criminal prosecution.  (Doc. []#902).  Mr. Banks fails to explain how such records are relevant to his case.  To the contrary, Mr. Banks appears to concede that the records will not have any practical impact on his conviction or sentence.  (Doc. #1171, pp.6–7).  Though Mr. Banks claims that he intends to seek a presidential pardon, he fails to explain how the records in question would help him achieve that goal. (Doc. #1171, pp. 6–9).

In sum, Mr. Banks has failed to provide any basis for unsealing those transcripts that this Court has not already considered and rejected. (*See* Doc. #1171).

ECF No. 1178 at 1–2.

Banks filed a timely notice of appeal.

II

In his appeal, Banks seeks to challenge what he describes as "(a) the continued refusal of the lower court to unseal portions of the record notwithstanding both the earlier rulings of this Court, and the case law," and "(b) the reliance of the lower court upon unfounded claims as to a basis for denying relief." Aplt. Br. at 19.

The threshold question we face in addressing Banks's arguments is how to properly characterize the motion that he filed in the district court.  We conclude, after examining the substance of the motion, that Banks was both seeking reconsideration of the district court's November 21, 2019 sealing order and, alternatively, asking the district court to issue a new order removing the seal that it had placed on portions of the transcripts and other documents from Walker's § 2255 proceeding.  Consequently, we shall compartmentalize and address his appellate arguments accordingly.[6]

A

We review for abuse of discretion a district court's denial of a motion for reconsideration.  *United States v. Barajas-Chavez*, 358 F.3d 1263, 1266 (10th Cir. 2004).  Although the Federal Rules of Criminal Procedure do not expressly authorize motions for reconsideration, such motions are proper and may be filed by the defendant or the government.  *United States v. Randall*, 666 F.3d 1238, 1241–42 (10th Cir. 2011).  "Because motions to reconsider in criminal cases are not grounded in a rule or statute, the time limits are not well established."  *Id*. at 1242.  Recognizing the problems that would occur if motions for reconsideration could "be

---

[6] We previously directed the parties to file supplemental briefs addressing the issues of issue and claim preclusion.  We ultimately do not reach those issues, however, because "[t]he 'determination of identity between litigants for the purposes of establishing privity is a factual question'" that we are not comfortable deciding in the first instance in this case.  *Lowell Staats Mining Co. v. Phila. Elec. Co*., 878 F.2d 1271, 1276 (10th Cir. 1989) (quoting *Astron Indus. Assocs. v. Chrysler Motors Corp.*, 405 F.2d 958, 961 (5th Cir. 1968)).

brought at simply any time," this court has held that such "motion[s] must be brought within the time for appeal." *Id.* Thus, for a criminal defendant such as Banks, a motion for reconsideration must be filed within fourteen days of the entry of the order for which reconsideration is sought. *See* Fed. R. App. P. 4(b)(1)(A).

It is beyond dispute that Banks filed his motion more than fourteen days after the district court's November 21, 2019 order. We therefore conclude that the district court did not abuse its discretion in denying Banks's motion to the extent that the motion challenged and effectively sought reconsideration of the court's November 21, 2019 order.

Most of Banks's appellate arguments, in our view, challenge the propriety of the district court's November 21, 2019 order. For example, Banks argues in his opening brief that the district court "failed to follow established precedent and sealed almost the entire record[,] . . . and ignored the prior Orders of this Court to conduct a proper analysis as to what, if any, portions of the record should be under seal." Aplt. Br. at 19. Relatedly, Banks questions "[h]ow . . . the lower court can take the position, in its November 21st, 2019 Order, that sealing 85% of the transcript constitutes a narrow tailoring of the record" and argues that this "is unexplained . . . and baffling." *Id.* at 24 n.8. Banks further argues that the district court's decision "not only mis-characterizes [sic] the supposed 'threats' that served as [the district court's] basis for sealing the record, but has no basis in law." *Id.* at 25. And he complains that there is no "indication in the record that [the district court] referred the matter to either federal or state law enforcement for investigation." *Id.* at 26.

20

Because we construe all of these arguments as challenges to the district court's November 21, 2019 order, we conclude that they are all foreclosed due to Banks's failure to timely seek reconsideration of that order.

B

We now turn to Banks's remaining arguments regarding the district court's refusal to issue a new order removing the seal it placed on portions of the transcripts and records in Walker's § 2255 proceeding.  We review for abuse of discretion a "district court's decision to seal or unseal documents," but we review de novo "any legal principles the district court applied when making its decision."  *Walker*, 761 F. App'x at 833.  "We apply the overarching abuse of discretion standard because the decision whether to seal or unseal is 'necessarily fact-bound.'"  *Id*. (quoting *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985)).

In *Walker*, this court outlined the general legal principles that apply regarding the sealing of judicial records and documents.  Of relevance here is the following:

> After a court orders documents before it sealed, the court continues to have authority to enforce its order sealing those documents, as well as authority to loosen or eliminate any restrictions on the sealed documents.  This is true even if the case in which the documents were sealed has ended.  If after a court seals its records a motion is made "to remove such a seal, the district court should closely examine whether circumstances have changed sufficiently to allow the presumption allowing access to court records to prevail.

*Id*. at 835 (quotation marks and citations omitted).

We conclude, after reviewing the district court's order and the record on appeal, that the district court did not abuse its discretion in refusing to remove the

21

seal that it placed on portions of the transcripts and records in Walker's § 2255 proceeding. The district court determined, as we read its order, that circumstances had not changed sufficiently to allow the presumption of public access to the transcripts and records to prevail. Notably, Walker does not seriously suggest otherwise. To be sure, he argues that the district court did not find that he personally represented a threat of misusing the transcripts and records. But that is immaterial because the district court determined that the threat of misuse of the transcripts and records by Banks's mother and members of CSFC remained and Banks does not challenge that finding. Banks does complain that the district court has never referred his mother or members of CSFC "to either federal or state law enforcement for investigation." Aplt. Br. at 26. But that is irrelevant to our review of the district court's decision.

III

AFFIRMED. The motions filed by the United States to seal Volumes II through V of its supplemental appendix and to take judicial notice of seven documents (ECF Nos. 1088, 1090, 1091, 1092, 1106, 1114, and 1171) filed in the district court are GRANTED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

21-1410, *United States v. Banks*

**McHUGH,** Circuit Judge, concurring in part and dissenting in part:

I concur with the majority's assessment that the district court did not abuse its discretion in maintaining a restriction on portions of the transcript from the hearing on Gary Walker's § 2255 motion. Where I diverge from the majority is with respect to the documents in Mr. Walker's § 2255 proceeding. Through his motion, David A. Banks asked the district court to "unseal all documents and other records" related to Mr. Walker's § 2255 proceeding. Nothing in the record suggests the district court performed the tedious review necessitated by this request. For, had the district court reviewed each of the documents presently under a Level 2 restriction, it would have discovered that many of the documents dealt with routine court proceedings and did not discuss the Colorado Springs Fellowship Church ("CSFC"), Pastor Rose Banks, any member of the CSFC, or the testimony of any § 2255 hearing witness. Therefore, I respectfully dissent in part and would order the district court to unrestrict access to many of the documents filed in Mr. Walker's § 2255 proceeding.

## I.    BACKGROUND

The majority provides a detailed factual and procedural history, with which I take no disagreement. I merely supplement and highlight a few facts relevant to the issue of the restricted documents, on which I dissent.

In October 2015, Mr. Walker pursued relief under § 2255 and first moved the district court to place a Level 2 restriction on documents filed in his § 2255 proceeding.[1] Thereafter, when filing documents in his § 2255 proceeding, Mr. Walker also filed motions for leave to restrict. The Government did not oppose Mr. Walker's motions for leave to restrict and, on occasion, itself moved for leave to restrict. The district court granted Mr. Walker's and the Government's requests that a significant number of documents in the § 2255 proceeding be filed under a Level 2 restriction. In total, the district court approved a Level 2 restriction on seventy-eight documents.[2] *See* Banks's App. at A-122–24, A-127–40 (ECF Nos. 899, 902, 913–14, 917, 921, 930–31, 937, 940–41, 947–49, 952–56, 960–64, 966, 970–71, 973, 976–77, 980, 984, 986, 988–89, 992–93, 995, 999–1000, 1003, 1005–08, 1011, 1014–16, 1020–23, 1025–27, 1029–30, 1033–36, 1042, 1044, 1047, 1050, 1055–56, 1059, 1065–66, 1068, 1071, 1074, 1076, 1081, 1085). The district court also placed a Level 2 restriction on almost the entire transcript of the hearing on Mr. Walker's § 2255 motion, allowing more expansive access to only the

---

[1] Under the District of Colorado Local Rules, a Level 2 restriction limited access to a document such that only Mr. Walker, the Government, and the district court could access a document. *See* D. Colo. Local Civ. R. 7.2(b); D. Colo. Local Crim. R. 47.1(b).

[2] Of the seventy-eight documents, seven documents filed by Mr. Walker are restricted at Level 2 access but list Mr. Banks as an individual capable of accessing the documents. *See* Banks's App. at A-125–28 (ECF Nos. 921, 930–31, 937–38, 947–48). The record does not reveal why the docket lists these seven documents differently than the other seventy-one Level 2 restricted documents, and I cannot say whether Mr. Banks actually has access to these seven documents. In any event, the public does not have access to these seven documents.

testimony of Gwendolyn Lawson, a CSFC member who is an attorney and represented

Mr. Walker and several of his co-defendants during phases of the criminal case.

In 2019, after this court vacated in part the district court's orders placing a Level 2

restriction on the transcript of Mr. Walker's § 2255 hearing, *see United States v. Walker*,

761 F. App'x 822, 840 (10th Cir. 2019) (*Walker I*) (unpublished), the CSFC filed a

motion to unrestrict.[3] In its motion, the CSFC asked for an order directing (1) the court

reporter to provide a transcript of the § 2255 hearing; and (2) "the Clerk of the Court to

unseal all documents and other records as submitted in [Mr. Walker's § 2255]

proceeding." Motion to Direct Court Reporter to Provide Transcript to Movant, and to

Unseal all Documents Submitted Therein at 1, United States v. Banks, No. 1:09-cr-

00266-CMA (D. Colo. June 9, 2019), ECF No. 1131. The CSFC further stated, "it is

respectfully requested that the Court direct the Clerk of the Court to provide to counsel

for the Movant, a copy of all of the Exhibits, Documents, and other Pleadings as

submitted in the aforesaid action, that are currently under Seal." *Id.* at 2.

The district court granted the motion in part and denied the motion in part. After

discussing prior conduct by CSFC members and its concerns that the CSFC would harass

certain witnesses or use the restricted material for a spiteful purpose if the CSFC gained

access to portions of the transcripts, the district court (1) maintained the restriction as to

thirteen witnesses; (2) removed the restriction as to two witnesses; and (3) removed the

---

[3] I discuss the CSFC's motion because the district court "incorporate[d]" its ruling on the CSFC's motion into its ruling on Mr. Banks's motion. Gov. App. Vol. I at 221. Thus, any reasoning offered by the district court when ruling on the CSFC's motion supports its decision to deny Mr. Banks's motion.

3

restriction as to some statements made by the court. In the conclusion, or decretal, section of its order, the district court stated:

> For the foregoing reasons, the Court UNSEALS the transcripts IN PART:
> 1. The Court MAINTAINS the Level 2 restriction with respect to the testimony of Witness #1, Witness #2, Witness #3, Witness #5, Witness #6, Witness #7, Witnesses ##9–14, and Witness #15;
> 2. The Court LIFTS the Level 2 restriction with respect to the testimony of Witness #4 and Witness #8; and
> 3. The Court LIFTS the Level 2 restriction with respect to any statements by the Court, except those which reveal the identities of protected witnesses.
> Any interested parties may submit a request and payment to the Court Reporter for a certified transcript of statements that are no longer under a Level 2 restriction.

Gov. App. Vol. I at 201–02. The docket text entry describing the order used identical language. *See* Banks's App. at A-148–49. The order's decretal and the docket text entry omitted any reference to the CSFC's request to unrestrict the documents, exhibits, and pleadings filed in Mr. Walker's § 2255 proceeding. And no discussion or analysis of whether to unrestrict the documents, exhibits, and pleadings can be found in the district court's order. In fact, the word "document" or "documents" appears but eight times in the order, seven times when the district court stated the general legal standards governing restrictions on public access and once when the district court quoted a press release issued by A Just Cause. Likewise, the district court did not discuss the need to maintain the restriction on any exhibits, using the word "exhibit" only when discussing Ms. Lawson's theft of an exhibit binder during the § 2255 hearing.

Turning to Mr. Banks, he filed a motion entitled "Motion to Direct Court Reporter to Provide Transcript to Defendant-Movant, and to Unseal all Documents Submitted

4

Therein." Banks's App. at A-155. And Mr. Banks began his motion by asking the district court to issue an order directing (1) the court reporter to provide a copy of the § 2255 hearing transcript and (2) "the Clerk of Court to unseal all documents and other records as submitted in [Mr. Walker's § 2255] proceeding." *Id*. After discussing the case's procedural history and the governing standards regarding restricting access to judicial documents and proceedings, Mr. Banks argued the district court did not comply with its own local rules or with Supreme Court and Tenth Circuit precedent when permitting Mr. Walker to file documents under a Level 2 restriction. In concluding his motion, Mr. Banks reasserted his need for "access to all of the records and proceedings in the *Walker* matter" and "requested that the Court direct the Clerk of the Court to provide to counsel . . . a copy of all of the Exhibits, Documents, and other Pleadings as submitted in the aforesaid action, that are currently under Seal." *Id.* at A-161–62. And Mr. Banks contended "the same principles and reasoning that the Court of Appeals relied upon [in *Walker I* when vacating the district court's orders] regarding the access to the transcript applies to all other documents, exhibits and pleadings." *Id.* at 162.

The district court denied Mr. Banks's motion. As the majority quotes, the district court began its analysis by stating that it had "already considered, at length, the arguments in favor of *unsealing the relevant transcripts*, and the [c]ourt incorporates that analysis here." Gov. App. Vol. I at 221 (emphasis added). The district court then summarized its position that release of the "requested records" could jeopardize witness and juror safety, which outweighed the interests advanced by Mr. Banks. The district court concluded its order by stating,

5

> In sum, Mr. Banks has failed to provide any basis *for unsealing those transcripts* that this [c]ourt has not already considered and rejected. Therefore, for the reasons stated above and in the [c]ourt's prior order, it is
>
> ORDERED that Banks's *motion to unseal the transcript* is DENIED. It is
>
> FURTHER ORDERED that Banks's motion for a status update is DENIED AS MOOT.

*Id.* at 222–23 (emphasis added) (docket citations omitted).

Mr. Banks timely appealed from the district court's order. *See* Fed. R. App. P. 4(a)(1)(B)(i) (permitting sixty days to file notice of appeal in action where the United States is a party); *see also United States v. Pinto*, 1 F.3d 1069, 1070 (10th Cir. 1993) (concluding sixty-day time period in Federal Rule of Appellate Procedure 4(a) applies to appeal from order in § 2255 proceeding). On appeal, Mr. Banks challenges the district court's denial of his motion to permit access to both portions of the transcript of the hearing on Mr. Walker's § 2255 motion and the documents and pleadings submitted in the § 2255 proceeding.

Specific to the documents and pleadings, Mr. Banks remarks that "[t]hroughout this entire proceeding the District Court ordered that almost all of the submitted pleadings be filed under seal." Appellant's Br. at 12 (citing as examples ECF Nos. 1065, 1066, and 1071). In summarizing his argument, Mr. Banks contends the district court "failed to follow established precedent and sealed almost the entire record — both the transcripts of the Walker habeas evidentiary proceeding, *and the filings made by both [Mr. Walker's] counsel and the Government* — and ignored the prior Orders of this Court to conduct a proper analysis." *Id.* at 19. In more detail, Mr. Banks argues the district court's maintenance of the Level 2 restriction on the filings and on most of the transcript (1) ran

6

contrary to the presumption of public access; (2) was not narrowly tailored; (3) did not

comply with the District of Colorado Local Rules; (4) did not take into account

Mr. Banks's personal interest in reviewing the restricted materials; and (5) was based on

speculation and holding Mr. Banks responsible for actions of other CSFC members,

including Pastor Banks. *Id.* at 20–27; *see also* Reply at 10–11 (noting the district court

did not deny a single motion to restrict access and arguing that "review of [Mr. Walker's

motions for leave to restrict] makes it clear that they were filed for every single document

and record in the case with no differentiation as to the content of the subject documents

or records"). Mr. Banks concludes his opening brief by asking this court to remand the

case so the district court can "conduct a proper analysis *of the entire record — both*

*pleadings* and transcripts — and only seal those portions that should be properly kept

confidential under the existing case law."[4] Appellant's Br. at 28 (emphasis added).

---

[4] The Government argues that, although Mr. Banks "moved the district court to unseal all documents and other records submitted in the § 2255 proceeding," he waived this court's review of the district court's order as to the documents and pleadings by not advancing any argument specific only to the documents and pleadings. Appellee's Br. at 34. However, as the above paragraph demonstrates, Mr. Banks's opening brief presents numerous arguments applicable to the Level 2 restriction placed on the documents by the district court. Further, Mr. Banks, although incarcerated at the time of the hearing on Mr. Walker's § 2255 motion, may have some knowledge of the general nature of the testimony at the hearing given the hearing was open to the public and attended by CSFC members. The same, however, cannot be said for the documents. Under the District of Colorado Local Rules, when a party moves for leave to file with restricted access, access to a document is automatically restricted until the district court rules on the motion for leave to file with restricted access. *See* D. Colo. Local Civ. R. 7.2(e) ("A document subject to a motion to restrict shall be filed as a restricted document and shall be subject to restriction until the motion is determined by the court."); D. Colo. Local Crim. R. 47.1(e) (same quotation). Thus, unlike the hearing transcript, Mr. Banks has no way of knowing what a specific document contains and is not in a position to advance specific

## II.     DISCUSSION

I start by summarizing the standard of review, as well as the legal standard for restricting public access to judicial proceedings and court documents. Then I briefly explain why I concur with the majority's affirmance as to the § 2255 hearing transcript. Further, I explain why I dissent in part from the majority's affirmance of the district court's maintenance of restricted access as to all documents in Mr. Walker's § 2255 proceeding. Finally, I discuss why I dissent in part from the majority's decision to grant the Government's motion to file four appendix volumes under seal.

### A.     *Standard of Review*

We review a district court's decision to seal or unseal documents for an abuse of discretion, but we review any legal principles the district court applied in considering a motion to seal or unseal de novo. *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013). We apply the abuse of discretion standard because the decision whether to seal or unseal is "necessarily fact-bound." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985). "An abuse of discretion has been characterized as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 981 (10th Cir. 2012) (internal quotation marks omitted). A district court abuses its discretion where it "(1) commits legal error, (2) relies on clearly erroneous factual findings, or (3) where no rational basis exists in the evidence to support its ruling." *Dullmaier v. Xanterra Parks & Resorts*, 883

---

arguments about a given document or set of documents. Accordingly, I reject the Government's waiver argument.

8

F.3d 1278, 1295 (10th Cir. 2018). Further, a district court abuses its discretion if it issues its ruling without sufficiently developing a record that allows for "meaningful appellate review." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1031 (10th Cir. 2007). But, under the abuse of discretion standard, "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1213 (10th Cir. 2010).

### B.　　*Legal Standard for Restricting Public Access*

The majority and *Walker I* adequately state the legal standard governing access to judicial documents and proceedings. *See* Maj. Order. at 21; *Walker I*, 761 F. App'x at 834–36. I, nonetheless, highlight three points. First, "[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Walker I*, 761 F. App'x at 834 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). From this, "'there is a *strong presumption* in favor of public access' as 'the interests of the public are presumptively paramount when weighed against those advanced by the parties.'" *Id.* (brackets and ellipsis omitted) (quoting *Pickard*, 733 F.3d at 1302). Second, any order restricting access to judicial records "must be '*narrowly tailored* to serve the interest' being protected by . . . restricting access to the records." *Id.* at 835 (brackets omitted) (quoting *Press-Enter. Co. v. Superior Ct. of Cal.*, 478 U.S. 1, 13–14 (1986)). Third, when "denying a motion to unseal, 'the trial court must articulate the interest warranting sealing along with findings specific enough that a reviewing court can determine whether the closure order was

9

properly entered.'" *Id.* at 836 (brackets omitted) (quoting *Phoenix Newspapers, Inc. v.*

*U.S. Dist. Ct. for the Dist. of Ariz.*, 156 F.3d 940, 949 (9th Cir. 1998)).

### C.    Hearing Transcript

I concur with the majority's conclusion that the district court did not abuse its

discretion by maintaining the restriction of access on the transcript of the testimony of

thirteen of the witnesses at Mr. Walker's § 2255 hearing. The district court expressed

concern that granting public access to these portions of the transcript might result in

harassment of the witnesses. And the district court rooted this conclusion in the past

conduct of CSFC members, including the harassment of jurors and Ms. Lawson's alleged

theft of an exhibit binder during the § 2255 hearing.[5] Further, in its order, the district

court discussed the testimony of each witness and included copious citations to the

record, demonstrating that the court, as to the § 2255 hearing transcript, engaged in the

---

[5] Mr. Banks argues he should not be held responsible for the actions of CSFC members and that the district court employed a guilt-by-association approach when denying his motion to unseal. However, Mr. Banks relied primarily on a public-right-of-access argument in his motion. Mr. Banks did not explicitly propose the lesser remedy of a change in the restriction level from Level 2 to Level 1 so that he, but not the public, could access the hearing transcript. *See* D. Colo. L. Civ. R. 7.2(b) ("There are three levels of restriction. Level 1 limits access to the parties and the court. Level 2 limits access to the filing party and the court."); *see also* D. Colo. L. Crim. R. 47.1(b) ("Unless otherwise ordered, there are four levels of restriction. Level 1 limits access to the parties and the court. Level 2 limits access to the filing party, the affected defendant(s), the government, and the court."). Nor did Mr. Banks, despite being aware of the district court's reasons for maintaining the restriction, provide any assurances, including proposing safeguards, that release of the full transcript to him would not result in the CSFC and Pastor Banks gaining access to the transcript. Accordingly, the district court was within its right to consider what might happen to witnesses should the transcript be made public and the CSFC gain access to the transcript.

10

tedious analysis required when considering a motion to unrestrict. Accordingly, I am unable to conclude that the district court reached an arbitrary, whimsical, or manifestly unreasonable result by maintaining the restriction as to the thirteen witnesses.

### D.    Documents Filed in Mr. Walker's § 2255 Proceeding

For two primary reasons, I reach a different conclusion regarding the documents.[6] First, as I read the district court's orders and reasoning, I am unconvinced the district court considered Mr. Banks's request that it unrestrict access to the documents, exhibits, and pleadings filed in Mr. Walker's § 2255 proceeding. Unlike with the hearing testimony where the district court took a witness-by-witness approach, the district court did not discuss any individual document or group of documents in its orders. Nor did the decretals in the district court's orders make any mention of the documents and pleadings, be it to unrestrict or maintain the restriction of them. Further, as discussed next, the

---

[6] In addition to my two primary reasons for dissenting in part, I observe the majority construes part of Mr. Banks's motion in the district court as a motion for reconsideration. For several reasons, I do not adopt this approach. First, the district court did not construe Mr. Banks's motion as one for reconsideration that raised arguments in an untimely manner. Second, the Government never contended Mr. Banks's motion was a motion for reconsideration and this court never received any briefing on the matter. Third, this was Mr. Banks's first attempt to gain access to the transcript and documents and the interests he asserted in these records, including hoping to use the records to seek a presidential pardon, are not identical to the interests advanced by the CSFC in its motions to unrestrict. Fourth, the Government conceded at oral argument that a party may file a new motion to unrestrict. Thus, nothing compelled Mr. Banks to pursue access to the transcripts and documents through a motion for reconsideration rather than a standalone motion to unrestrict. Fifth, where the district court had already ruled on the CSFC's motion to unrestrict, which raised some of the same arguments as Mr. Banks's motion, it was logical for Mr. Banks, in pursuing his own motion, to address the arguments previously adopted by the district court. Therefore, Mr. Banks's discussion of the district court's prior order does not, in my opinion, convert his motion into a motion for reconsideration.

11

substance of many of the documents demonstrates that, had the district court reviewed each document and employed the approach it did with the transcript, it would have quickly and easily realized that many of the documents do not contain materials falling within its reasons for maintaining the restriction on parts of the transcripts. Finally, the continued restriction on some of the documents, specifically the district court's orders that contain its own analysis, is inconsistent with the district court's decision to unrestrict many of the statements it made during the § 2255 hearing. This also supports the conclusion that, despite Mr. Banks's clear request for access to the documents, the district court did not review the documents. Accordingly, I would conclude the district court failed to review the documents and necessarily abused its discretion.

Second, even if one could read the district court's orders as suggesting it reviewed each of the restricted documents because it used the word "records" in its order denying Mr. Banks's motion, in my estimation, the district court's decision to maintain the restriction on all documents would be an abuse of discretion. Given the subject and characteristics of the seventy-eight restricted documents, I view the documents as falling into three categories.

One category involves documents that contain discussion of the merits of Mr. Walker's § 2255 motion and/or a significant number of statements critical of the CSFC, Pastor Banks, or other members of the CSFC. *See e.g.*, *United States v. Walker*, No. 1:09-cr-00266-CMA-3 (D. Colo.), ECF Nos. 899, 902, 921, 930–31, 937, 941, 947–48, 952, 956, 966, 970, 986, 989, 992–93, 999–1000, 1005, 1008, 1011, 1014, 1020, 1023, 1025, 1042, 1044, 1055, 1059, 1081, 1085. As to these documents, I would affirm

12

the district court's order on harmless error grounds because the reasons offered by the district court for maintaining the restrictions on the transcript unquestionably apply to these documents. And I have no reservations that if this court were to remand for the district court to assess these documents in the first instance, the district court would maintain the restriction on these documents. *Cf. United States v. Wright*, 826 F.2d 938, 943 (10th Cir. 1987) (conclusion on appeal that district court abused its discretion "does not require reversal if that abuse amounted to harmless error"); *United States v. Lane*, 474 U.S. 438, 449 (1986) (explaining that abuse of discretion is harmless unless it impacts a litigant's substantial rights by influencing the outcome of the proceedings).

A second category consists of documents that (1) contain passing discussion of conduct by the CSFC or its members; (2) include the names and other identifying information of witnesses or individuals involved in the medical examination of Mr. Walker; and/or (3) involve matters likely to garner increased public interest, such as the Federal Bureau of Prisons' failure to timely comply with certain orders issued by the district court. *See, e.g., Walker*, No. 1:09-cr-00266-CMA-3, ECF Nos. 949, 953, 962–63, 971, 976, 988, 1021, 1026, 1047.[7] As to this category of documents, I would direct the district court to unrestrict the documents but remand to give the district court the opportunity to permit redactions of materials within the documents that invoke the

---

[7] In identifying these documents, as well as the third category of documents, I look only at the primary docket entry and do not suggest that I would order the district court to unrestrict any or all of the exhibits filed as attachments to some of these two categories of documents.

concerns raised by the district court when maintaining the restriction of portions of the § 2255 hearing transcript. Such an approach would draw the proper balance between the strong presumption in favor of public access and the need to protect witnesses. And it would result in restrictions to public access that are narrowly tailored to the reasons supporting restriction.

The third category of documents involves (1) motions seeking what I will call relatively routine matters of procedure, such as seeking extensions of time or leave from the court to file documents or to take preliminary or discovery-based steps in pursuing § 2255 relief; and (2) orders of the court, often addressing these types of motions, which do not discuss in any great detail the arguments relative to Mr. Walker's § 2255 motion or the conduct of the CSFC, Pastor Banks, or other members of the CSFC.[8] *See, e.g., id.* at ECF Nos. 913–14, 917, 938, 940, 954–55, 960–61, 964, 973, 977, 980, 984, 995, 1003, 1006–07, 1015–16, 1022, 1027, 1029–30, 1033–36, 1050, 1056, 1065–66, 1068, 1076. None of the district court's reasons for maintaining the restriction on portions of the transcript apply to these documents. And having reviewed each document, I do not believe the district court could articulate any non-arbitrary reason for maintaining the restriction to access on these documents. Accordingly, at present, the district court's restriction of access as to this third category of documents neither complies with the requirement that any restriction be narrowly tailored nor adequately accounts for the strong presumption of public access to judicial documents. Therefore, I am unable to

---

[8] Because these documents remain restricted in light of the majority's decision, I describe them with a certain degree of generality.

concur with the majority's affirmance of the district court's denial of Mr. Banks's motion relative to these documents. Instead, I would order the district court to fully remove the restriction on access as to these documents.

### E.    Government's Motion to File Appendices under Seal

Finally, the Government has moved to submit four volumes of its proposed appendix under seal. The majority grants this motion. The volumes of the proposed appendix that the Government moves to file under seal contain some of the restricted documents discussed in the previous section, as well as the transcript of the testimony of fifteen witnesses from the hearing on Mr. Walker's § 2255 motion. While I recognize the Government attempts to assist this court by filing the proposed appendix, I am unable to conclude that the governing law permits the Government to file the appendix volumes under seal in their current form. Specifically, the transcript submitted by the Government includes the testimony of two witnesses that the district court already unsealed. Thus, while I would consider granting the motion to the extent the Government seeks to provide this court with a copy of the restricted portions of the transcript,[9] I would deny the motion to the extent the proposed appendices include transcripts of witness testimony already made accessible to the public by the district court. *See Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (where information has already been exposed to public view, the interest of the party seeking to restrict access is diminished); *see also Pickard*, 733 F.3d

---

[9] In the alternative, I would consider denying the motion as unnecessary and striking the four sealed volumes of the appendix submitted by the Government because this court can already access these transcripts and documents through the district court.

15

at 1305 (noting that sealed information that was once "made public suggests that much of the information . . . could be unsealed").

## III.    CONCLUSION

I respectfully dissent in part. While I would affirm the district court's decision to maintain the restriction on part of the § 2255 hearing transcript and some of the documents filed in Mr. Walker's § 2255 proceeding, I would order the district court to unrestrict a wide swath of documents filed in the proceeding. I would also deny, in part, the Government's motion to file four volumes of its appendix under seal.